# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| DAVID HAL,<br><br>    Plaintiff,<br><br>    v.<br><br>NANCY BERRYHILL, Deputy Commissioner for Operations, performing duties and functions not reserved to the Commissioner of Social Security,<br><br>    Defendant. | Case No. CV 17-05612-DFM<br><br>MEMORANDUM OPINION AND ORDER |

Plaintiff David Hal ("Plaintiff") appeals from the final decision of the Social Security Commissioner denying his application for disability insurance benefits ("DIB"). For the reasons discussed below, the Commissioner's decision is reversed and this matter is remanded.

## I. BACKGROUND

On June 2, 2011, Plaintiff filed his initial application for DIB, alleging disability beginning on March 15, 2011. See Administrative Record ("AR") 82-83. His application was denied on April 17, 2012. See AR 93.

On March 8, 2013, Plaintiff filed an application for DIB alleging the same onset date. See AR 195-203. Plaintiff's application was denied and he

subsequently requested a hearing before an administrative law judge ("ALJ"). See AR 67, 99. An ALJ held a hearing on September 16, 2015, during which the ALJ heard testimony by Plaintiff, who was represented by counsel, medical experts Dr. Glenn Griffin and Dr. Thomas Maxwell, and a vocational expert ("VE").[1] See AR 39-66. On October 26, 2015, the ALJ issued an unfavorable decision. See AR 7-31.

The ALJ determined that Plaintiff had severe impairments of bipolar disorder, history of poly-substance-induced mood disorder, arthritis, hypertension, hyperlipidemia, gastroesophageal reflux disorder, and history of anemia. See AR 12. The ALJ found that Plaintiff did not have any impairment or combination of impairments that met or equaled the severity of a listed impairment. See AR 20. The ALJ found that Plaintiff retained the residual functional capacity ("RFC") to perform work at the light exertional level with the following limitations: he could lift 10 pounds frequently and 20 pounds occasionally; he could sit, stand, or walk up to 6 hours in an 8-hour day; he could occasionally sustain posturals and push or pull with the lower extremities; he could never climb, work at heights, or work around hazards; and he could frequently (but not constantly) sustain detailed or complex tasks. See AR 23. Based on the VE's testimony, the ALJ found that Plaintiff could perform the representative occupations of cafeteria attendant, routing clerk, and information clerk. See AR 29-30. Therefore, the ALJ concluded that Plaintiff was not disabled. See AR 30.

---

[1] At the hearing, Plaintiff's counsel moved to re-open his June 2011 application, which was denied less than 12 months before Plaintiff filed his March 2013 application. See AR 43-44, 346; see also 20 C.F.R. § 404.988(a) (allowing for the reopening of DIB determinations and decisions within 12 months of the notice of the initial determination). Because the ALJ's findings pertain to the original onset date, it appears that the ALJ reopened Plaintiff's June 2011 application. See AR 10, 12.

The Appeals Council denied review of the ALJ's decision, which became the final decision of the Commissioner. See AR 1-6. Plaintiff then sought review by this Court. See Dkt. 1.

## II. ISSUES PRESENTED

The parties dispute whether (1) substantial evidence supported the ALJ's step three finding; (2) the RFC assessment was supported by substantial evidence and was consistent with the step three finding; and (3) the ALJ erred in failing to consider a third-party function report. See Dkt. 19, Joint Stipulation ("JS") at 3.

## III. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free from legal error and are supported by substantial evidence based on the record as a whole. See 42 U.S.C. § 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial evidence means such relevant evidence as a reasonable person might accept as adequate to support a conclusion. See Richardson, 402 U.S. at 401; Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla, but less than a preponderance. See Lingenfelter, 504 F.3d at 1035 (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1996). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Id. at 720-21.

## IV. DISCUSSION

### A. Step Three Finding

Plaintiff argues that substantial evidence did not support the ALJ's finding that he failed to meet or equal Listing 12.04. See JS at 3-4. Specifically, Plaintiff contends that the ALJ erred in finding that he did not meet the "Paragraph B" criteria for Listing 12.04. See id. at 4-5.

For a claimant's impairment to meet or equal the severity of Listing 12.04 (affective disorders), either the requirements in both Paragraph A and B, or the requirements in Paragraph C, must be satisfied. See 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.04.[2] Paragraph B requires that the claimant's symptoms of affective disorder result in at least two of the following: (1) marked restriction of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace; or (4) repeated episodes of "decompensation" (defined as "exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning"), each of "extended duration" (meaning three episodes within 1 year or an average of once every 4 months, each lasting for at least 2 weeks). 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00(C)(4), 12.04(B). "Marked" means "more than moderate but less than extreme." 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(C). "Marked" is not determined by a specific

---

[2] Social Security Regulations regarding the listing of impairments were amended effective May 22, 2018. Where, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 804 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."). Accordingly, the Court applies the versions of 20 C.F.R. pt. 404, subpt. P, app. 1, §§ 12.00 and 12.04 that were in effect at the time of the ALJ's October 2015 decision.

number of activities of daily living in which functioning is impaired, different behaviors in which social functioning is impaired, or tasks the claimant is unable to complete, but by the "nature and overall degree of interference" with that function. Id.

At step three, the ALJ considered whether Plaintiff's mental impairments met or equaled the criteria of Listings 12.04 and 12.09.[3] See AR 22. The ALJ determined that Plaintiff's mental impairments did not cause at least two marked limitations or one marked limitation and repeated episodes of decompensation. See id. The ALJ found that Plaintiff had mild restriction in activities of daily living, noting that Plaintiff's "allegations of limitations in this domain stem from his physical complaints" and that this finding afforded Plaintiff "the benefit of the doubt." Id. In social functioning, the ALJ found that Plaintiff had mild difficulties, noting that despite allegations of auditory hallucinations, "he has reported no difficulty in social functioning." Id. The ALJ observed that Plaintiff "admitted attending multiple public meetings" during his time at a sober living facility and afterwards, and "expressly denied any difficulty interacting with authority figures." Id. The ALJ found that Plaintiff had moderate difficulties in maintaining concentration, persistence, or pace, stating that "no significant limitations were noted on clinical exam, even by his treating sources" despite Plaintiff's alleged deficits in memory and concentration. Id. Finally, the ALJ found that Plaintiff had experienced no episodes of decompensation of extended duration, noting "an insufficient offer of proof" of Plaintiff's alleged manic episodes during sobriety and during the relevant period. Id. Therefore, the ALJ determined that Plaintiff's mental impairments did not meet or equal the Paragraph B criteria. See id.

---

[3] Plaintiff does not contest the ALJ's findings as to Listing 12.09 (substance addiction disorders). See JS at 3-5.

1. **Activities of Daily Living**

To the extent that the ALJ indicated that Plaintiff's alleged restrictions in activities of daily living arise entirely from his physical symptoms, see AR 22, the ALJ was mistaken. In an adult function report from March 2012, Plaintiff alleged that he needed help or reminders taking medicine, sometimes forgot which appointments he had, and could not pay bills or handle a savings account after having "lost interest in most things except work and [his] children." AR 325-27. In an adult function report from September 2013, Plaintiff stated without further explanation that he did not prepare his own meals or shop, and could not handle a savings account because he was not good at saving money. See AR 229-30. In an updated disability report submitted in February 2014, Plaintiff alleged that tasks that should take 1 day to complete took him 2 or 3 days, and that he experienced difficulty reading "as [his] mind is overloaded with voices." AR 255, 257. Generally, however, Plaintiff reported functioning fairly independently. He reported that he had minimal or no issues with personal care and needed no reminders to take care of personal care or grooming, see AR 228-29, 324-25, could take public transit and go out alone, see AR 230, 326, and did various household chores including laundry, cleaning, and taking out the trash without needing help or encouragement, see AR 229, 325. Furthermore, Dr. Griffin opined that Plaintiff had only mild restrictions in this domain.[4] See AR 51. The ALJ

---

[4] Although the ALJ did not mention Dr. Griffin's opinion in explaining her Paragraph B findings, she recited Dr. Griffin's opined Paragraph B limitations in explaining her RFC finding. See AR 28. Undeniably, an ALJ's decision may only be upheld based on the "reasoning and factual findings offered by the ALJ—not post hoc rationalizations that attempt to intuit what the adjudicator may have been thinking." Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1225 (9th Cir. 2009). But here, where the ALJ made note of Dr. Griffin's paragraph B findings, assigned Dr. Griffin's opinion great

assigned Dr. Griffin's opinion "great weight," see AR 28, which Plaintiff does not contest.

Plaintiff cites several Global Assessment of Functioning ("GAF") scores ranging from 20 to 48, presumably implying a correlation to restrictions in activities of daily living.[5] See JS at 4-5. To begin with, the Commissioner has declined to endorse GAF scores, 65 Fed. Reg. 50764-65 (Aug. 21, 2000) (GAF score "does not have a direct correlation to the severity requirements in our mental disorders listings"), and the most recent edition of the DSM "dropped" the GAF scale, citing its lack of conceptual clarity and questionable psychological measurements in practice. Diagnostic and Statistical Manual of Mental Disorders 16 (5th ed. 2013). Moreover, although the GAF scores Plaintiff cites admittedly indicate severe impairment of psychological, social, and occupational functioning, Plaintiff ignores numerous GAF scores of 55

---

weight, and made paragraph B findings that ultimately mirrored Dr. Griffin's opinion, the Court infers that the ALJ relied upon Dr. Griffin's opinion in her step three determination.

Furthermore, Plaintiff had the burden of proving at step three that his impairment met or equaled a listed impairment. See Parra, 481 F.3d at 745 ("The claimant bears the burden of proving steps one through four."). Plaintiff has not presented evidence demonstrating marked limitations in any domain or repeated episodes of decompensation. Thus, remand is not warranted and would not be helpful on this issue.

[5] A GAF score of 11-20 indicates "some danger of hurting self or others," "occasional[] fail[ure] to maintain minimal personal hygiene," or "gross impairment" in communication. Diagnostic and Statistical Manual of Mental Disorders 34 (revised 4th ed. 2000) (DSM IV). A GAF score of 21-30 may indicate "inability to function in almost all areas." Id. A GAF score of 31-40 may indicate "major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood." Id. A GAF score of 41-50 may indicate "serious impairment in social, occupational, or school functioning." Id.

and 60 which suggest only moderate impairment.[6] See, e.g., AR 890, 892, 900, 908-10, 914, 916-17, 943. The ALJ is ultimately responsible for resolving ambiguities in the record. See Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995). Where, as here, the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. See Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

Plaintiff also contends that the loss of custody of his children, along with various mental status findings, demonstrate that he met the Paragraph B criteria of Listing 12.04. See JS at 4-5. As noted with regard to the GAF scores, Plaintiff fails to connect this evidence to any particular Paragraph B subcriterion. Furthermore, the ALJ was not required to discuss every piece of evidence in making a disability determination. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003). Finally, even if the Court were to accept Plaintiff's argument that substantial evidence supported an alternative finding that Plaintiff met the Paragraph B criteria, see JS at 4-5, remand would not be warranted unless the record also failed to support the ALJ's conclusion, see Reddick, 157 F.3d at 720-21 (holding that "the court may not substitute" its own judgment where evidence "can reasonably support either affirming or reversing" the ALJ's decision). In light of Plaintiff's function reports and Dr. Griffin's testimony, substantial evidence supported the ALJ's finding of no marked restriction in activities of daily living. Accordingly, the ALJ did not err.

2. **Social Functioning**

In concluding that Plaintiff alleged no difficulty with social functioning, it appears that the ALJ disregarded Plaintiff's March 2012 function report. In

---

[6] A GAF score of 51-60 is consistent with "moderate symptoms" or "moderate difficulty in social, occupational, or school functioning." DSM IV at 34.

that report, Plaintiff alleged that he had been fired or laid off from a job because of problems getting along with others, stating that he "was not working well with [his] coworkers" at Caston Properties and stopped going to work. AR 329. Plaintiff also indicated that he had problems getting along with family, friends, neighbors, or others, stating that he and his wife "fight a lot," and that while he used to go out with friends, he became "more of a loner" since the onset of his illness. AR 328.

By contrast, in the September 2013 function report, Plaintiff indicated no problems getting along with family, friends, neighbors, or others, and stated that he had not been fired or laid off because of problems getting along with others. See AR 232-33. When asked about getting along with authority figures, Plaintiff answered, "I respect authority." AR 233. Furthermore, Plaintiff stated that he attended various substance abuse recovery meetings during his time at the sober living facility, see AR 227, 231, although the record does not demonstrate that he continued to attend public meetings thereafter. As previously explained, Plaintiff's GAF scores are not dispositive of any particular limitations in this domain. See supra Section IV.A.1. Finally, Dr. Griffin's finding of mild difficulties in social functioning supports the ALJ's identical conclusion. See AR 51. Therefore, despite the ALJ's omission of Plaintiff's earlier allegations, substantial evidence ultimately supports the ALJ's finding of no marked difficulties in social functioning.

### 3. Concentration, Persistence, or Pace

While the ALJ may have mischaracterized Plaintiff's mental status examinations as showing "no significant limitations" in memory and concentration, substantial evidence nevertheless supports the ALJ's finding of moderate difficulties in concentration, persistence, or pace. Although a few examinations found deficits in these areas, see AR 427 (fragmented concentration), 747 (impairment of recent memory), 764 (impaired memory),

numerous other assessments indicated that Plaintiff's memory and concentration were unimpaired, see AR 387 (adequate memory and concentration), 427 (unimpaired memory), 755 (good memory and concentration), 889 (adequate memory and concentration). Likewise, Dr. Griffin's finding of moderate difficulties in this domain supported the ALJ's conclusion. See AR 51. The ALJ is "the final arbiter with respect to resolving ambiguities in the medical evidence." Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008). Substantial evidence in the record supported the ALJ's conclusion that Plaintiff's impairment caused only moderate difficulties in concentration, persistence, or pace. Accordingly, the ALJ did not err, regardless of whether the medical evidence was "susceptible to more than one rational interpretation." Burch, 400 F.3d at 679.

### 4. Repeated Episodes of Decompensation

Plaintiff contends that three instances in which he intentionally overdosed on pills constitute repeated episodes of decompensation. See JS at 4-5. But Plaintiff offers no proof that these instances meet the frequency or durational requirements of Paragraph B subcriterion. Moreover, one overdose occurred in October 2010 and predates the alleged onset date. See AR 806. Therefore, the ALJ correctly declined to find repeated episodes of decompensation.

Because the ALJ's Paragraph B findings were supported by substantial evidence, remand is not warranted on this ground.

### B. RFC Assessment

Plaintiff argues that the RFC assessment is not supported by substantial evidence because the ALJ did not fully incorporate the opinions of consulting examiner Dr. Lou Ellen Sherrill or state agency medical consultant Dr. Stonsa

N. Insinna. [7] See JS at 5-6, 11-12, 17-18. Additionally, Plaintiff argues that the RFC finding that he could frequently (but not constantly) sustain detailed or complex tasks conflicts with the ALJ's assessment of moderate limitation in concentration, persistence, or pace at step three. See JS at 13-14.

In her report, Dr. Sherrill stated that Plaintiff "can perform simple repetitive tasks with minimal supervision" and "appropriate persistence and pace over a normal work cycle." AR 595-96. Dr. Insinna found that Plaintiff had moderate difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. See AR 75. Dr. Insinna also found moderate limitations in understanding and remembering detailed instructions, carrying out detailed instructions, maintaining attention and concentration for extended periods, interacting appropriately with the general public, and responding appropriately to changes in the work setting. See AR 77-78. Accordingly, Dr. Insinna opined that Plaintiff was capable of "understanding and remembering simple one or two step instructions," "maintaining concentration for two hour periods with normal breaks," engaging in "limited social contact," and performing "simple, routine tasks." AR 77-79. Despite determining that Plaintiff had moderate difficulties in concentration, persistence, or pace, see AR 22, and assigning "great weight" to both doctors' opinions, AR 27-28, the ALJ did not adopt these limitations in the RFC, see AR 23. Instead, as the sole mental limitation in Plaintiff's RFC, the ALJ adopted Dr. Griffin's contrary opinion that Plaintiff could frequently perform detailed or complex tasks. See AR 23, 51.

---

[7] Plaintiff mistakenly states that both state agency medical consultants assessed the same limitations due to mental impairment. See JS at 11-12, 17-18. In reality, state agency consultant Dr. Colsky found Plaintiff's mental impairments non-severe, and no mental RFC was assessed. See AR 87-91.

In determining a claimant's disability status, an ALJ has the responsibility to determine the claimant's RFC after considering "all of the relevant medical and other evidence" in the record. 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c). "Thus, an RFC that fails to take into account a claimant's limitations is defective." Valentine v. Comm'r of Social Sec. Admin., 574 F.3d 685, 690 (9th Cir. 2009).

Despite mentioning limitations from both Drs. Sherrill and Insinna restricting Plaintiff to simple and repetitive or routine tasks, the ALJ ultimately rejected these limitations without further explanation. See AR 23, 27. Thus, the ALJ failed to provide the requisite "specific and legitimate" reasons for rejecting this portion of examining physician Dr. Sherrill's opinion. Carmickle v. Comm'r Soc. Sec. Admin, 533 F.3d 1155, 1164 (9th Cir. 2008) (holding that an examining physician's contradicted opinion may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record" (citing Lester v. Chater, 81 F.3d 821, 830-31 (9th Cir. 1995) (as amended))). The ALJ also neglected to provide any reasoning for not incorporating Dr. Insinna's opined limitations in the RFC. See Sousa v. Callahan, 143 F.3d 1240, 1244 (9th Cir. 1998) (holding that an ALJ "may reject the opinion of a non-examining physician by reference to specific evidence in the medical record.").

Furthermore, this Court finds the moderate limitation in maintaining concentration, persistence, or pace assessed by the ALJ inconsistent with the RFC finding that Plaintiff could frequently sustain detailed or complex tasks. The Commissioner contends that Ninth Circuit precedent, including Stubbs-Danielson v. Astrue, 539 F.3d 1169 (9th Cir. 2008), allows the ALJ to translate a claimant's pace and mental limitations into an RFC finding. See id. at 1174; see also JS at 15-16. But in Stubbs-Danielson, the court held that the ALJ "adequately capture[d]" the claimant's moderate limitations in concentration,

persistence, or pace by limiting the claimant to simple, routine, repetitive work. See Stubbs-Danielson, 538 F.3d at 1173-74. Here, the ALJ declined to limit Plaintiff to simple, routine tasks, instead finding a much less restrictive RFC. See AR 23. Moreover, unlike in Stubbs-Danielson, here the RFC is not "consistent with restrictions identified in the medical testimony." Stubbs-Danielson, 539 F.3d at 1174. Thus, the ALJ erred in formulating the RFC.

Finally, as identified by the Commissioner, the ALJ's decision contains some ambiguity about Plaintiff's mental limitations. See JS at 16. Although the RFC assessment found that Plaintiff could frequently (but not constantly) perform detailed or complex tasks, see AR 23, the ALJ later stated that "tasks have been limited herein to simple repetitive ones, which would accommodate for any problem" in memory or concentration, AR 26. However, even if the Court assumed that the ALJ intended to limit Plaintiff to simple, repetitive tasks, the Court cannot find that the ALJ's error was harmless. Citing the VE's testimony, the Commissioner argues that Plaintiff could have performed the jobs at step five even if he were limited to simple, repetitive tasks, see JS at 17, but the transcript does not support this argument.

After Drs. Maxwell and Griffin testified to Plaintiff's physical and mental limitations including that he could frequently sustain detailed or complex tasks, findings which the ALJ ultimately adopted as the RFC, the VE testified that an individual with such limitations could not perform Plaintiff's past relevant work but could perform the occupations of cafeteria attendant, routing clerk, and information clerk. See AR 51-54. Plaintiff's counsel then questioned Dr. Griffin at length about the extent of Plaintiff's mental impairment in light of various treatment notes and evidence of Plaintiff's sobriety. See AR 55-64. After Plaintiff's counsel briefly examined Dr. Maxwell, he and the ALJ both questioned the VE:

> [ATTORNEY]: If claimant is off task 15 percent of the day due to problems with concentration and memory, would he be able to do the jobs you identified?
>
> [VE]: In my opinion, based on my professional experience no.
>
> [ALJ]: And let me ask you this, if we were to take all the limitations that have already been – that I have already identified and limited it to no detailed and complex, just simple repetitive tasks to accommodate for any lack of concentration, would your answer be different as to the jobs available?
>
> [VE]: No.

AR 65. The Commissioner appears to argue that the VE's final answer is evidence that the VE thought a claimant with an RFC that limited him to simple, repetitive tasks could perform the jobs identified by the VE. But the Court is far from sure about the Commissioner's interpretation of the transcript. In asking whether the VE's answer would be "different," it is unclear whether the ALJ implied a comparison to the prior question from Plaintiff's counsel, or to the ALJ's own questioning more than ten transcript pages earlier in the hearing. Thus, the Court cannot conclude that the VE's testimony evidences Plaintiff's ability to perform the representative occupations when limited to simple, repetitive tasks, or that the occupations would be available in significant numbers within the national economy even with such restrictions.[8] Accordingly, the Commissioner's harmless error argument fails, and remand is warranted on this ground.

---

[8] The Court's skepticism is exacerbated by the fact that the occupation of information clerk has a reasoning level of four, which requires "[a]pply[ing] principles of rational systems to solve practical problems and deal[ing] with a variety of concrete variables in situations where only limited standardization

14

## C. Third-Party Function Report

Plaintiff argues that the ALJ erred in disregarding a third-party function report from Beverly Effros. See JS at 19. Because remand is warranted based on the ALJ's errors in formulating the RFC, the Court does not reach this issue. On remand, the ALJ may wish to consider Effros's statement in her RFC determination, particularly with regard to Plaintiff's purported difficulty in following instructions.

## D. Remand for Further Proceedings Is Appropriate

The decision whether to remand for further proceedings is within this Court's discretion. See Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. See id. at 1179 (noting that "the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"); Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004).

A remand is appropriate, however, where there are outstanding issues that must be resolved before a determination of disability can be made and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated. See Bunnell v. Barnhart, 336 F.3d 1112, 1115-16 (9th Cir. 2003); see also Garrison v. Colvin, 759 F.3d

---

exists." Dictionary of Occupational Titles 237.367-018. The Ninth Circuit has held that "there is an apparent conflict between the residual functional capacity to perform simple, repetitive tasks and the demands of Level 3 Reasoning." Zavalin v. Colvin, 778 F.3d 842, 847 (9th Cir. 2015). Therefore, even if the VE had testified that Plaintiff could perform work as an information clerk despite being limited to simple, repetitive tasks, the ALJ would have been required to reconcile the apparent conflict between the RFC and the VE's testimony. See id.

995, 1021 (9th Cir. 2014) (explaining that courts have "flexibility to remand for further proceedings when the record as a whole creates serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act."). Here, the Court finds that remand is the appropriate remedy to allow the ALJ the opportunity to correct the above-mentioned deficiencies in the record. On remand, the ALJ must fully and properly assess Plaintiff's RFC with regard to the limitations assessed by Drs. Sherrill and Insinna and supported by the medical evidence in the record.

## V. CONCLUSION

For the reasons stated above, the decision of the Social Security Commissioner is REVERSED and the action is REMANDED for further proceedings.

Dated: December 21, 2018

_____
DOUGLAS F. McCORMICK
United States Magistrate Judge